**IN THE UNITED STATES DISTRICT COURT
NORHTERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

Ronald Christopher,

                       Plaintiff,

            v.

City of Chicago,

                    Defendant.

Case No.: 20-cv-02716

District Judge Tharp
Magistrate Judge McShain

**DEFENDANT CITY OF CHICAGO'S MEMORANDUM
IN SUPPORT OF SUMMARY JUDGMENT**

CELIA MEZA
Acting Corporation Counsel of the
City of Chicago
2 North La Salle Street, Suite 640
Chicago, Illinois 60602

SCOTT CROUCH
JESSICA R. DURKIN
Assistants Corporation Counsel
Employment Litigation Division
(312) 744-8369/2846
Scott.crouch@cityofchicago.org
Jessica.durkin@cityofchicago.org

Counsel for Defendant, City of Chicago

**Table of Contents**

I.    INTRODUCTION...........................................................................................................................1
II.   SUMMARY OF FACTS ...............................................................................................................1
     A.   Application for Emergency Crew Dispatcher..................................................................1
     B.   Plaintiff's prior employment with the City .....................................................................3
          1.   Complaints between 2006 and 2013...........................................................................3
          2.   October 23, 2013 altercation and termination ...........................................................3
          3.   2014 Accord Submission to the OIG regarding *Shakman*.........................................4
     C.   Decision not to hire Plaintiff ............................................................................................5
     D.   Plaintiff's Complaint and procedural history ..................................................................6
III.  Legal Standard..............................................................................................................................7
IV.   Argument .......................................................................................................................................7
     A.   Plaintiff fails to show age discrimination in violation of the ADEA or §1983. ...........7
          1.   There are no similarly-situated comparators as Cephas had not been previously terminated
          from the City and did not make misrepresentations on her background check form. ..................8
          2.   Plaintiff cannot show his age was the but-for cause for the decision not to hire him...........9
               a.   Plaintiff admitted no one referenced his age during the hiring process. ...............9
               b.   Toledo was unaware of Plaintiff's age when she made the decision to recommend not
               hiring him. ...................................................................................................................9
          3.   The City had a legitimate business reason not to hire Plaintiff. ...............................9
          4.   Plaintiff cannot show pretext. .................................................................................10
     B.   Plaintiff fails to establish a *prima facie* case for First Amendment retaliation............11
          1.   Plaintiff's alleged complaints were not protected speech.........................................11
               a.   Plaintiff's complaints regarding hiring practices while employed at 2FM ...........12
               b.   Plaintiff's complaints to the OIG in 2008, 2010 and February 2014 ....................12
          2.   No causal connection between alleged protected activities and hiring decision................14
               a.   Toledo had no knowledge of any of Plaintiff's prior complaints. ........................15
               b.   Plaintiff cannot show a retaliatory motive existed. ..............................................15
          3.   City would have not hired Plaintiff regardless of alleged protected activities.........15
     C.   Plaintiff fails to establish *Monell* liability. ...................................................................16
          1.   Jacqueline Toledo was not final policymaker for the City. .....................................17
          2.   There is no evidence of a widespread custom. ........................................................17
          3.   There is no evidence of an express policy violating Plaintiff's constitutional rights............17
V.    Conclusion...................................................................................................................................18

Defendant, City of Chicago ("City"), by its attorneys, submits the following Memorandum in Support of Summary Judgment.

## I.   INTRODUCTION

Ronald Christopher (Plaintiff) alleges that the City's July 2019 decision not to hire him for the position of Emergency Crew Dispatcher (ECD) with the City's Department of Water Management (DWM) was due to his age (58 at time of application) and because of his complaints in February 2014 and earlier about not being promoted during his previous employment with the City. To the contrary, it is undisputed that the person who recommended not hiring Plaintiff for ECD was unaware of his age and his prior complaints, and made the recommendation based on Plaintiff's admitted misconduct during his prior employment: yelling and swearing at his supervisor, and based on his misrepresentation on the background check form for the ECD position. Thus, Plaintiff cannot make out a *prima facie* case of age discrimination because none of the successful applicants had previously been terminated from the City or made misrepresentations on their background check forms. The City's refusal to hire Plaintiff because of his misconduct and misrepresentation is a legitimate non-discriminatory reason for the decision, which Plaintiff cannot show is pretextual. Additionally, Plaintiff cannot prove First Amendment retaliation, because his prior complaints were not protected speech. Further, there is no causal connection between Plaintiff's five-plus-year-old complaints and the decision not to hire him for ECD. Finally, Plaintiff's section 1983 age discrimination and retaliation claims fail as Plaintiff cannot establish *Monell* liability. As explained hereinafter, the Court should grant judgment in the City's favor on all of Plaintiff's claims.

## II.   SUMMARY OF FACTS

### A.  Application for Emergency Crew Dispatcher

Plaintiff, Ronald Christopher (age 58 at time of application) applied for the position of Emergency Crew Dispatcher (ECD) with the City's Department of Water Management (DWM) on

November 26, 2018. (City's Local Rule 56.1(a)(3) Statement of Undisputed Facts ("SOF") ¶¶ 1, 2). There were two vacant ECD positions when Plaintiff applied. (SOF ¶ 25).

Martin Wise, a Recruiter with the City's Department of Human Resources (DHR), screened the ECD applications to determine whether the applicants' submitted materials supported their representations that they met the minimum qualifications set forth in the three Disqualification Questions. (SOF ¶ 26.) Wise determined Plaintiff and 11 other applicants met the minimum qualifications for the ECD position. (SOF ¶ 27). The 12 candidates who passed the initial screening stage of the hiring process were invited to take mandatory aptitude tests, which occurred on May 24, 2019. (SOF ¶ 28).

Plaintiff and three other candidates, April Sherman, Giavonna Cephas, and Hollie Morris, took and passed the aptitude tests and were thus considered "pre-qualified." (SOF ¶¶ 28, 29). On or about June 11, 2019, Wise used the City's HR software program, Taleo, to randomize the candidates and created a referral list, which he sent to DWM's personnel department. (SOF ¶ 30). After the lottery, Plaintiff was ranked 1st, Sherman was ranked 3rd, Cephas was ranked 8th, and Morris was ranked 12th. (SOF ¶ 31). However, since the other eight applicants had either failed the test or not shown up for it, the ranking was effectively: Plaintiff 1st, Sherman 2nd, Cephas 3rd and Morris 4th. (SOF ¶¶ 31, 32).

On June 14, 2019, Ashley Pak, who works in the DWM's Bureau of Administrative Support, emailed the four pre-qualified candidates and invited them to fill out pre-employment forms. (SOF ¶ 34). The emails indicated that the candidates "should be aware that participation in the employment process is not an offer of employment." *Id.* After receiving the email on June 14th, Plaintiff called Pak, who reiterated on the phone that filling out the pre-employment paperwork was not an offer of employment. (SOF ¶ 35). On June 19, Plaintiff went to Pak's office and filled out multiple forms, including a "Criminal Background Disclosure Release Form." (SOF ¶ 36).

2

On this Form, candidates provide information about criminal convictions and prior employment with the City. (SOF ¶ 37). Plaintiff indicated he had been previously employed with the City. *Id.* The form included a question: "Have you ever been discharged or resigned in lieu of discharge from the City of Chicago?" which Plaintiff checked "yes." *Id.* Under "termination reason/incident" Plaintiff wrote: "Upon being refused interviews for every position I had applied for, I questioned the Department's hiring practices. I was then released." *Id.*

## B. Plaintiff's prior employment with the City

Plaintiff worked as an Assistant to the Commissioner in the City's Department of Fleet and Facility Management (2FM) from February 2002 until October 29, 2013. (SOF ¶¶ 8, 21). Plaintiff applied for promotions four times while he was with 2FM: Manager of Vehicle Maintenance in <u>2006 and 2009</u>, and Director of Maintenance Operations in <u>2007 and 2013</u>. (SOF ¶ 8). Plaintiff was never interviewed for these positions. *Id.*

### 1. Complaints between 2006 and 2013

Plaintiff testified that he complained internally between <u>2006 and 2013</u> to his colleagues and supervisors about not being promoted as a result of political hiring. (SOF ¶ 9). In 2008 and again in 2010 Plaintiff complained to the City's Office of Inspector General (OIG) about not being interviewed for various positions at 2FM and his belief he was being consciously excluded. (SOF ¶ 10).

### 2. October 23, 2013 altercation and termination

On October 23, 2013, Plaintiff learned he was being reclassified from Assistant to the Commissioner to Manager of Vehicle Adjustment and as a result would receive a $4,000/year salary *increase*. (SOF ¶ 15). Plaintiff considered the manager position a demotion because he felt he had been performing director-level duties for years. *Id.* After learning about the new position, he went into his immediate supervisor, Walter West's office "to confront him." (SOF ¶ 16). Plaintiff closed

3

the door and an argument ensued, Plaintiff testified that he (Plaintiff) "did most of the yelling," used

profanity and admitted that he (Plaintiff) "absolutely" acted unprofessionally. *Id.* During the

argument with West, Plaintiff did not raise political discrimination or nepotism. (SOF ¶ 17). Rather,

Plaintiff indicated he thought it was wrong that he had performed the duties of Manager of Vehicle

Adjustment for 9 years and the duties of a higher position, Director of Maintenance Operations for

two years and was being re-classified into the Manager position, which was lower than the Director

position. *Id.*

On Saturday, October 26th, West called Plaintiff and told him he was being terminated

According to Plaintiff, Iris O'Donnell (his 2FM co-worker) overheard the argument and told

then-Commissioner David Reynolds, whose office was on the same floor. (SOF ¶ 18).

Commissioner Reynolds opened the door to West's office and instructed Plaintiff to go home,

which Plaintiff did. *Id.* Witness statements from O'Donnell and Commissioner Reynolds

corroborate and add to Plaintiff's account of Plaintiff yelling and swearing at West for 15-20

minutes, O'Donnell asking the Commissioner to intervene, and the Commissioner instructing

Plaintiff to leave and threatening to call the police if he did not leave. (SOF ¶ 19). Plaintiff was off

work on October 24th and 25th for scheduled vacation time. (SOF ¶ 20).

On Saturday, October 26th, West called Plaintiff and told him he was being terminated

because of "the incident" on Wednesday, October 23rd. (SOF ¶ 21).

### 3. 2014 Accord Submission to the OIG regarding *Shakman*

In February 2014, Plaintiff, through an attorney, submitted a form complaint, titled "Accord

Complaint," to the at the OIG. (SOF ¶ 22).[1] Like his previous complaints in 2008 and 2010, this

---

[1] The City was dismissed from the lawsuit for substantial compliance with the *Shakman* decree on 6/16/2014, meaning that the City no longer required federal court supervision over its hiring practices. (Dkt. No. 3861) *Shakman, et al., v. Democratic Organization of Cook County, et al.*, 69-CV-02145 (N.D. Ill.) (lawsuit alleging that the Illinois governor's office, various Cook County governmental entities and the City filled jobs based on Democratic political patronage).

complaint mainly listed Plaintiff's qualifications for two positions he applied for and did not receive, along with a detailed history of all the jobs Plaintiff applied for at 2FM that he did not receive. *Id.*

## C.  Decision not to hire Plaintiff

Jacqueline Toledo was the Director of Administration for DWM in July 2019. (SOF ¶ 39). Prior to making a final employment recommendation, Toledo reviewed Plaintiff's "Criminal Background Disclosure Release Form," which indicated he was terminated from 2FM in October 2013. (SOF ¶¶ 38-40). After reviewing the form, Toledo contacted Paul Plantz, a former administrative manager at 2FM, regarding the reasons for Plaintiff's discharge. (SOF ¶ 40). During the conversation, Toledo learned that Plaintiff had been discharged for acting unprofessionally including yelling and using profanity towards his supervisor. (SOF ¶ 41).

Toledo then contacted Wise to inquire as to whether DWM would need to hire Plaintiff even though he was previously terminated for acting unprofessionally and misrepresented the reasons for his termination on the form. (SOF ¶ 42). Wise contacted his supervisor Kathleen Doyle, a Deputy Commissioner for DHR, on July 10, 2019 to inquire if DWM was still required to hire Plaintiff. (SOF ¶¶ 43-45). Doyle responded the same day that "DWM has the right to forego moving forward with the candidate based on the information regarding the circumstances surrounding his prior termination with the City and his misrepresentation on the criminal background form." (SOF ¶¶ 45-46). Once Toledo learned DWM could elect not to hire Plaintiff, she consulted with Deputy Commissioner Marisol Santiago from the DWM Commissioner's office. (SOF ¶ 48.) Toledo recommended not hiring Plaintiff based on the unprofessional conduct he displayed that resulted in his termination and his misrepresentation of the circumstances of the termination on his background form. (SOF ¶¶ 47-48). Deputy Commissioner Santiago agreed with Toledo's recommendation and approved not hiring Plaintiff. (SOF ¶ 48). Toledo was not aware of any of complaints Plaintiff had made to the OIG or anyone at 2FM about political hiring when she made

5

her decision to recommend DWM not hire Plaintiff. (SOF ¶¶ 60, 62). Toledo was not aware of Plaintiff or any other pre-qualified candidates' ages when she made her recommendation to the Commissioner's office to not to hire Plaintiff. (SOF ¶ 61).

On July 18, 2019, Toledo spoke with Plaintiff on the phone and informed him that he was not going to be hired based on his prior misconduct at 2FM that led to his termination and the misrepresentation on his disclosure form. (SOF ¶ 49). During the call, Plaintiff did not deny that he had acted unprofessionally in October 2013, including yelling and using profanity. (SOF ¶¶ 50, 51). Plaintiff admits he did not mention any of the previous complaints he made to his supervisors or the OIG about political discrimination to Toledo during that call. (SOF ¶ 52). Plaintiff admitted this was his only communication with Toledo and that she did not mention his age during the call. (SOF ¶ 53). Plaintiff has not identified comments anyone made about his age but testified his allegation of age discrimination in the ECD hiring process is based solely on his belief that a younger person, Cephas, was hired for the ECD position. (SOF ¶ 5). None of the other pre-qualified candidates had been terminated from the City for misconduct or made misrepresentations during the background check process. (SOF ¶¶ 57-59).

**D. Plaintiff's Complaint and procedural history**

Plaintiff filed a Complaint on May 5, 2020 under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621, *et seq.*, alleging he was not hired for an ECD position with DWM. (Complaint, Dkt. No. 1, ¶¶ 1 & 14). Plaintiff alleged he did not get that position because: 1) he was over 40-years-old and 2) in retaliation for complaints he had made to the City when he was previously employed by the City from 2002 through 2013. (Complaint, Dkt. No. 1, ¶¶ 15, 22 & 25– 27). The City moved to dismiss the ADEA retaliation claims for failure to exhaust. (*See Partial Motion to Dismiss*, Dkt. No. 12). The Court dismissed ADEA retaliation claims but allowed Plaintiff to bring a retaliation claim regarding his complaints of political hiring. (*March 5, 2021 Order*, Dkt. No. 32.)

6

Additionally, the Court ordered that Plaintiff is also allowed to pursue his age discrimination claim under § 1983. *Id.*

## III.   LEGAL STANDARD

Summary judgment is proper if the pleadings, depositions, interrogatories, admissions, affidavits and other materials show no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. F.R.C.P. 56; *Hakim v. Accenture United States Pension Plan*, 718 F.3d 675, 681 (7th Cir. 2013). Once the moving party presents grounds for judgment, the burden shifts to the non-moving party, who must "set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). "Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). The court construes the evidence in the light most favorable to the non-moving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

## IV.   ARGUMENT

### A.   Plaintiff fails to show age discrimination in violation of the ADEA or § 1983.

In order to prove age discrimination under the ADEA or Section 1983[2] for failure to hire, Plaintiff must show: (1) he is a member of a protected class, (2) he applied for an open position for which he was qualified, (3) the employer rejected him from that position, and (4) the employer either filled the position with a similarly situated individual outside of the plaintiff's protected class or left the position vacant. *Waddy v. Bd. of Educ. of City of Chicago*, 10 C 6158, 2014 WL 3732573, at *4 (N.D. Ill. July 24, 2014)(citing *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1110 (7th Cir. 2004)). "If

---

[2] The *prima facie* elements for age discrimination are the same under the ADEA and Section 1983. *See Sommerfield v. Knasiak*, 967 F.3d 617, 622 (7th Cir. 2020) ("In general, the same standards govern intentional discrimination claims under Title VII, § 1981, and § 1983;") *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 n.3 (7th Cir. 2009) ("We apply the same analytical framework to employment discrimination cases whether they are brought under the ADEA or Title VII.")

the plaintiff meets each element of [his] *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *Skiba v. Ill. Cent. R.R.*, 884 F.3d 708, 719-20 (7th Cir. 2018)(citing 29 U.S.C. § 623(a)(1)). Additionally, Plaintiff must show but-for causation. *Id.* at 719. It is not enough for a Plaintiff to demonstrate there were "mixed motives." *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 171 (2009). He must show "age was the 'reason' that the employer decided to act." *Id.* at 176. Plaintiff's age discrimination claim fails for four reasons: 1) he cannot point to any similarly-situated comparators, 2) he cannot show age was the but-for reason he was not hired, 3) the City has a legitimate non-discriminatory reason for not hiring him, which 4) he cannot prove is pretextual.

1. **There are no similarly-situated comparators as Cephas had not been previously terminated from the City and did not make misrepresentations on her background check form.**

Plaintiff cannot establish the fourth element of the *prima facie* case, as there is no evidence of a similarly-situated comparator. Plaintiff points only to Cephas as an allegedly similarly-situated individual. (SOF ¶ 5). However, Cephas had not previously been terminated from the City for misconduct and the City did not find any evidence that she made misrepresentations on her background check form. (SOF ¶¶ 54-59). *See Johnson v. Koppers, Inc.*, 726 F.3d 910, 916 (7th Cir. 2013)(employees who had not previously violated employer's policies were not appropriate comparators)(citing *Amrhein v. Health Care Serv. Corp.,* 546 F.3d 854, 860 (7th Cir. 2008)(employees were not similarly-situated because, unlike the plaintiff, they did not previously engage in misconduct)). *See also, Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (A similarly situated employee "is one whose performance, qualifications, and conduct are comparable in all material respects.") Thus, as Cephas is not similarly situated, Plaintiff cannot make out a *prima facie* age discrimination claim and judgment should be granted in the City's favor on Plaintiff's age discrimination claims.

2.  **Plaintiff cannot show his age was the but-for cause for the decision not to hire him.**

    a.  **Plaintiff admitted no one referenced his age during the hiring process.**

At deposition, Plaintiff did not point to any comments anyone made about his age but testified his age discrimination claim was based solely on his belief that a younger person, Cephas, was hired for the position. (SOF ¶¶ 5, 53). "Absent more, Plaintiff's speculation is insufficient evidence on which to ground a finding of intentional discrimination." *Skiba v. Canadian Nat'l Ry. Co.*, 15 C 5353, 2017 WL 1344525, at \*4 (N.D. Ill. Apr. 12, 2017), *aff'd sub nom. Skiba*, 884 F.3d 708 (7th Cir. 2018). As Plaintiff cannot point to any evidence that age was a factor in the decision to not hire him, he cannot carry his burden of proving age was a but-for cause for the City's decision not to hire him.

    b.  **Toledo was unaware of Plaintiff's age when she made the decision to recommend not hiring him.**

It is undisputed that Toledo did not know Plaintiff's age when she recommended the City not hire him. (SOF ¶¶ 53, 60, 61). Toledo only spoke with Plaintiff once, over the phone, after DWM had decided not to hire Plaintiff, when she was conveying the City's decision to him. (SOF ¶ 53). A Plaintiff "cannot establish a *prima facie* case of discrimination when the employer lacks any knowledge of a plaintiff's membership in a protected class." *Bush v. Lakeside Bldg. Maint., Inc.*, 04 C 5716, 2007 WL 9815941, at \*2 (N.D. Ill. June 15, 2007)(citing *Reed v. The Great Lakes Co.*, 330 F.3d 931, 934 (7th Cir. 2003) (plaintiff failed to establish a *prima facie* case of religious discrimination when the plaintiff never expressed his religious views to his employer)); *see also, Sarullo v. United States Postal Service*, 352 F.3d 789, 798-99 (3rd Cir. 2003) (plaintiff could not establish a *prima facie* case of ethnic discrimination when the decision maker was unaware of plaintiff's background).

3.  **The City had a legitimate business reason not to hire Plaintiff.**

Even if the Court were to find Plaintiff met his burden, the City had a legitimate business reason not to hire Plaintiff. Plaintiff was one of four applicants who were found to meet the

minimum qualifications, passed the ECD test and were referred to DWM as pre-qualified candidates. (SOF ¶¶ 28-33). Plaintiff was ultimately rejected because of his misconduct during his previous employment with the City and because of his misrepresentations on the background check form. (SOF ¶¶ 40-51). Plaintiff admitted to acting unprofessionally in 2013, and admitted he was terminated for yelling at his supervisor and using profanity. (SOF ¶¶ 15-21, 38, 51). Plaintiff further admitted he did not reference this incident on his background check form when asked to list the reasoning for his termination. (SOF ¶¶ 36-38). An employee's use of profanity, disrespectful confrontation with a supervisor, and misrepresentations in a job application are legitimate non-discriminatory reasons for adverse employment actions. *See Alexander v. Cit Tech. Fin. Services, Inc.*, 217 F. Supp. 2d 867, 889 (N.D. Ill. 2002)(employee's use of profanity, and disrespectful confrontations with management were legitimate non-discriminatory reasons for termination); *Mustafa v. Illinois Prop. Tax Appeal Bd.*, 67 F. Supp. 3d 988, 999 (N.D. Ill. 2014)(holding "inconsistencies on employment application" were a legitimate non-discriminatory reason for discharge.)

### 4. Plaintiff cannot show pretext.

In order to rebut the City's legitimate non-discriminatory reason for not hiring him, Plaintiff must point to evidence that shows the reason was false or pretextual, and that Plaintiff's age was the true reason he was not hired. *Tyburski v. City of Chicago*, 964 F.3d 590, 598 (7th Cir. 2020)(citing *Skiba*, 884 F.3d at 719). "To show pretext, a plaintiff must do more than simply allege that an employer's stated reasons are inaccurate" he must point to evidence showing discriminatory motive. *Tyburski*, 964 F.3d at 599–600(citing *Benuzzi v. Bd. of Educ. of the City of Chicago*, 647 F.3d 652, 663 (7th Cir. 2011). Even when a plaintiff can show the decisionmaker was aware of his age, that is not enough to show pretext in the age discrimination context. *Tyburski*, 964 F.3d at 599–600. Here, Plaintiff cannot show the decisionmaker was aware of his age. (SOF ¶¶ 53, 60-61). Further, there is no evidence in

the record showing Plaintiff's age and not his admitted prior misconduct and misrepresentation on his paperwork were the real reasons for the City's decision not to hire him.

**B.** **Plaintiff fails to establish a *prima facie* case for First Amendment retaliation.**[3]

To prevail on his First Amendment claim Plaintiff must establish: (1) he engaged in a protected activity; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the protected activity was at least a motivating factor in the City's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Plaintiff fails to establish he engaged in First Amendment protected activity and that his alleged protected activities were a motivating factor in the City's decision not to hire him. To establish he engaged in protected activity, "a public employee first must prove that [his] speech is constitutionally protected." *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016). To do that, the employee must show: "(1) [he] made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) [his] interest in expressing that speech was not outweighed by the state's interests as an employer in promoting effective and efficient public service." *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013)(internal quotation marks omitted); *see also Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)("[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern.")

**1.** **Plaintiff's alleged complaints were not protected speech.**

Plaintiff testified about two sets of complaints: 1) internal complaints to his supervisors and colleagues at 2FM from 2002-2013; and 2) complaints to the OIG in 2008, 2010 and February 2014,

---

[3] The Court is allowing Plaintiff to proceed under a § 1983 political retaliation claim. Such a claim, must be brought under the First Amendment. *See Boyd v. Illinois State Police,* 384 F.3d 888, 898 (7th Cir. 2004)("[T]he right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause.") *See also, Tate v. Ancell*, 551 Fed. Appx. 877, 898 (7th Cir. 2014)(a claim for political retaliation under the equal protection clause does not exist).

after he was not interviewed for positions he applied for within 2FM. (SOF ¶¶ 9-14, 22-24). None of these complaints were First Amendment protected activities.

### a. Plaintiff's complaints regarding hiring practices while employed at 2FM

Plaintiff alleges he complained to a deputy commissioner of 2FM of "political hiring practices in 2013." (SOF ¶ 9). He further alleges he complained about "political discrimination" internally at 2FM to his colleagues and supervisors throughout his employment. *Id.* Plaintiff was merely airing personal grievances to his former supervisors about not getting interviewed or hired for internal jobs, and not speaking on matters of public concern. *Id.*

The court in *Kubiak* held when a government employee complains that a fellow employee treated them in an improper manner in the workplace, that speech does not qualify as a matter of public concern. 810 F.3d at 483-84; *see also*, *Gross v. Town of Cicero*, 619 F.3d 697, 706 (7th Cir. 2010) ("Purely personal grievances do not garner First Amendment protection"). Accordingly, Plaintiff's internal complaints to his supervisors and colleagues that he was not hired for jobs due to "nepotism" do not involve matters of public concern, only his own personal grievances. (SOF ¶ 9).

### b. Plaintiff's complaints to the OIG in 2008, 2010 and February 2014

Plaintiff made three complaints to the OIG about not receiving positions at 2FM for which he applied. He made two of these complaints during his employment and one in the six months following his termination. (SOF ¶¶ 10-14, 22). Plaintiff first called the OIG on December 9, 2008 after he applied for a Director of Operations position at 2FM, and he complained that someone else was hired "as a result of preferential treatment". (SOF ¶ 11). He requested that the OIG ascertain how many candidates were interviewed for the position and see if he had been "consciously excluded" from the interviewing process. *Id.*

Plaintiff next contacted the OIG on November 30, 2010 via facsimile complaining that three hiring managers at 2FM had denied him the opportunity to interview for various job postings in

2FM. (SOF ¶ 13). In the 2010 OIG complaint, Plaintiff alleged that the hiring managers were working in conjunction with DHR to eliminate applicants like himself who are not "politically or personally in favor". *Id*.

Finally, in February 2014, Plaintiff, through an attorney, sent a form "Accord Complaint" to the OIG after his October 2013 termination. (SOF ¶ 22). Like his 2008 and 2010 complaints, the 2014 complaint mainly listed Plaintiff's qualifications for two positions he applied for and did not receive, along with a detailed history of all the jobs Plaintiff applied for at 2FM that he did not receive. *Id*. On March 14, 2014, a Deputy General from the OIG sent a letter to Plaintiff's attorney indicating that the OIG would not be investigating his claims because "[t]he complaint does not allege that any specific impermissible political discrimination was involved in the employment decision". (SOF ¶ 23). The letter further stated that 2FM had "sole discretion" as to who to interview off the referral list for the "senior management" positions. *Id*.

All three complaints clearly show that Plaintiff felt personally aggrieved by not being interviewed for positions within 2FM, and that Plaintiff was not speaking out as a matter of public concern. In deciding whether complaints are matters of public concerns, a court considers its content, its form, and the context in which it was written. *Connick v. Meyers,* 461 U.S. 147–48, (1983). Content is the most important. *Chaklos v. Stevens,* 560 F.3d 705, 714 (7th Cir. 2009).

Plaintiff's complaints are similar as to the first amendment retaliation claims in *Fagbemi v. City of Chicago*. In that case, the plaintiff complained to the OIG and *Shakman* monitor about a failed promotion, and his memorandum detailing the situation was "dedicated" to listing his accomplishments and qualifications for the promotion. No. 08 C 3736, 2010 WL 1193809, at *12 (N.D. Ill. Mar. 19, 2010). The court granted summary judgment in the City's favor on the first amendment retaliation claims in part because those communications were merely personal grievances. *Id*. Here, in all three complaints, Plaintiff details his qualifications for the various

positions he applied for and explains why he believes the reasons he was not given those positions were contrived. (SOF ¶¶ 11, 13, 22). Additionally, this case is similar to *Fagbemi*, because the plaintiff there was told to contact the OIG if he had problems with the hiring decision, just as the Plaintiff here was told by a recruiting manager from DHR in 2010 if he "believe[d] DHR's actions are fraudulent" he should contact the OIG. (SOF ¶ 14). The 2008 OIG complaint also indicates that Plaintiff contacted the OIG because the City's Compliance Officer had suggested that he do so. (SOF ¶ 12). Thus, these communications were within the City's "personnel hierarchy". *Taylor v. Carmouche*, 214 F.3d 788, 792 (7th Cir. 2000). Consequently, it is clear from both the content and context of Plaintiff's 2008, 2010, and February 2014 complaints to the OIG that he was not speaking out as a matter of public concern, but airing his own personal grievances. (SOF ¶¶ 11-14, 22).

**2. No causal connection between alleged protected activities and hiring decision.**

At the summary judgment stage in a First Amendment retaliation case, the burden of proof on causation is "split between the parties." *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Initially, the burden is on the plaintiff to produce evidence that his speech was at least a motivating factor of the employer's decision to take retaliatory action against him. *Id.* Then, the burden shifts to the employer to rebut the causal inference raised by the plaintiff's evidence. *Id.* The plaintiff can meet his burden with either direct or circumstantial evidence. *Id.* "Circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other employees in the protected group." *Id.* at 966.

Plaintiff cannot show his speech was a motivating factor in the decision not to hire him because Toledo had no knowledge of any of his complaints when she decided to recommend not hiring him for the position. Moreover, Plaintiff has failed to offer any direct or circumstantial evidence that the decision was motivated by his protected activities that occurred several years prior.

### a. Toledo had no knowledge of any of Plaintiff's prior complaints.

Plaintiff cannot plausibly argue he was not hired because of his alleged protected activities because Toledo, the person who decided to recommend not hiring him, had no knowledge at the time she made that decision that Plaintiff had: 1) complained to his supervisors at 2FM about political hiring or 2) complained to the OIG in 2008, 2010 or February 2014. (SOF ¶ 62). *See Hillman v. City of Chicago*, 834 F.3d 787, 794 (7th Cir. 2016)(failed to show retaliation by decision-maker with no knowledge of protected activity); *see also*, *Van Dyke v. Barnes*, No. 13 C 5971, 2017 WL 1105390, at *7 (N.D. Ill. Mar. 24, 2017)(summary judgment granted where no reasonable jury could find for plaintiff on a First Amendment retaliation claim when the decisionmaker was unaware of alleged protected activities).

### b. Plaintiff cannot show a retaliatory motive existed.

Plaintiff has not provided any other evidence of a retaliatory motive. In particular, there is no evidence that similarly-situated employees were treated differently than him or evidence of any comments to show that the decision to recommend not hiring him was based on a retaliatory animus. *See King v. Ford Motor Company*, 872 F.3d 833 (7th Cir. 2017)(affirming summary judgment on a retaliation claim where plaintiff failed to offer comparator evidence). Moreover, the substantial time lapse between the alleged protected activities and the decision not to hire is "counter-evidence of any causal connection". *Filipovic v. K & R Exp. Systems, Inc.,* 176 F.3d 390, 393 (7th Cir. 1999).

### 3. City would have not hired Plaintiff regardless of alleged protected activities.

For the reasons stated *supra* at sections IV.A.2.a., (p. 9); IV.A.2.b., (p. 9); and IV.A.3., (pp. 9-10), the City would not have hired Plaintiff notwithstanding his complaints about the City's hiring practices.

**C.      Plaintiff fails to establish *Monell* liability.**

Pursuant to the Court's Order, Plaintiff's claims of age discrimination and retaliation for complaining about political hiring are allowed to proceed pursuant to section 1983. Dkt. No. 32. Section 1983 does not provide for *respondeat superior* liability against municipalities for an individual municipal actor's constitutional violations. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017). A municipality may only be held liable for constitutional deprivation based on governmental policies or customs. *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Before Christopher can establish liability under *Monell*, he must first demonstrate that a violation of his constitutional rights occurred. *See Houskins v. Sheahan,* 549 F.3d 480, 493 (7th Cir. 2008) (where plaintiff fails to establish deprivation of a constitutional right, *Monell* claims must also fail). Thus, for the reasons explained *supra* at sections IV.A. (pp. 7-11) and IV.B. (pp. 11-15), Plaintiff's *Monell* claim fails because the City did not discriminate against him based on his age in violation of the equal protection clause and it did not retaliate against him in violation of the First Amendment.

Even if the Court allows his constitutional claims to proceed, Plaintiff still fails to establish a *Monell* claim. In order to establish a claim against the City under *Monell*, Plaintiff must plausibly demonstrate "the unconstitutional act complained of is caused by: '(1) an official policy adopted and promulgated by its officers; (2) a practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority.'" *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978)). Christopher fails to submit any facts that his alleged injuries were caused by a final policy maker, widespread practices or an express policy.

1. **Jacqueline Toledo was not final policymaker for the City.**

It is undisputed that Toledo ultimately recommended Plaintiff not be hired for the ECD position with DWM. (SOF ¶¶ 39-48). However, as the Director of Administration, she was not a final personnel policymaker for the City as a matter of law. (SOF ¶ 39). *Harris v. City of Chicago*, 665 F.Supp.2d 935, 948 (N.D. Ill. 2009) (City department head not personnel policymaker for the City). Thus, Plaintiff cannot establish *Monell* liability on this prong.

2. **There is no evidence of a widespread custom.**

Plaintiff has failed to set forth any evidence that a widespread practice caused Plaintiff to be discriminated against due to his age or retaliated against for complaining about political hiring. Plaintiff must prove the widespread practices are "so entrenched and well-known as to carry the force of policy." *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). Additionally, a plaintiff "must show more than the deficiencies specific to his own experience" to establish a widespread practice. *Daniel v. Cook County*, 833 F.3d 728, 734 (7th Cir. 2016). Here, Plaintiff has not submitted any evidence that he or anyone else suffered from age discrimination or retaliation.

3. **There is no evidence of an express policy violating Plaintiff's constitutional rights.**

Plaintiff has failed to allege any express policies that encourage age discrimination or retaliation for making complaints about political hiring. In fact, the City's express policies directly **prohibit** age discrimination, political hiring, and retaliation for reporting such conduct.

Both the City's Personnel Rules and its EEO Policy expressly prohibit discrimination based on age. (SOF ¶ 65). Additionally, the City's Personnel Rules prohibit "the entry of Political Reasons or Factors or other Improper considerations into any stage of the selection and hiring processes for Covered Positions." (SOF ¶ 66). Finally, the Ethics Ordinance prohibits retaliation against an employee or discloses to a supervisor or public body what the employee reasonably believes is a violation of a law, rule or regulation. (SOF ¶ 66). Accordingly, age discrimination and retaliation for

complaining about hiring practices alleged are directly contrary to the City's express written polices and ordinances, so Plaintiff cannot establish that an express policy caused his injuries.

## V. <u>CONCLUSION</u>

The Court should grant judgment in the City's favor on all of Plaintiff's claims.

Dated: April 30, 2021        Respectfully submitted,

CELIA MEZA
Acting Corporation Counsel of the City of Chicago

By:    */s/ Scott Crouch*
       */s/ Jessica R. Durkin*
       SCOTT CROUCH
       JESSICA R. DURKIN
       Assistants Corporation Counsel

Employment Litigation Division
2 North La Salle Street, Suite 640
Chicago, Illinois 60602
(312) 744-8369/2846
Scott.crouch@cityofchicago.org
Jessica.durkin@cityofchicago.org

Counsel for Defendant, City of Chicago

## <u>Table of Authorities</u>

**Federal Cases**

*Alexander v. Cit Tech. Fin. Services, Inc.*, 217 F. Supp. 2d 867 (N.D. Ill. 2002) ...........................10

*Amrhein v. Health Care Serv. Corp.,* 546 F.3d 854 (7th Cir. 2008) ..................................................8

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986)....................................................................................7

*Benuzzi v. Bd. of Educ. of the City of Chicago*, 647 F.3d 652 (7th Cir. 2011)...............................10

*Boss v. Castro,* 816 F.3d 910 (7th Cir. 2016)........................................................................................8

*Boyd v. Illinois State Police,* 384 F.3d 888 (7th Cir.2004) ................................................................11

*Bridges v. Gilbert,* 557 F.3d 541 (7th Cir.2009) ................................................................................11

*Bush v. Lakeside Bldg. Maint., Inc.*, 04 C 5716, 2007 WL 9815941 (N.D. Ill. June 15, 2007)....................9

*Chaklos v. Stevens,* 560 F.3d 705 (7th Cir.2009) ..............................................................................13

*Connick v. Meyers,* 461 U.S. 147–48, (1983) ....................................................................................13

*Daniel v. Cook County*, 833 F.3d 728 (7th Cir. 2016) ......................................................................17

*Fagbemi v. City of Chicago* ...........................................................................................................13, 14

*Filipovic v. K & R Exp. Systems, Inc.*, 176 F.3d 390 (7th Cir. 1999)...............................................15

*Foley v. City of Lafayette*, 359 F.3d 925 (7th Cir. 2004)....................................................................7

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) ..........................................................................................11

*Gill v. City of Milwaukee*, 850 F.3d 335 (7th Cir. 2017) ..................................................................16

*Gross v. FBL Financial Services, Inc.,* 557 U.S. 167 (2009) ..............................................................8

*Gross v. Town of Cicero*, 619 F.3d 697, 706 (7th Cir. 2010)………………………………………..12

*Hakim v. Accenture United States Pension Plan*, 718 F.3d 675 (7th Cir. 2013) .............................7

*Harris v. City of Chicago*, 665 F.Supp.2d 935 (N.D. Ill. 2009) ......................................................17

*Hillman v. City of Chicago*, 834 F.3d 787 (7th Cir. 2016) ..............................................................15

*Houskins v.Sheahan,* 549 F.3d 480 (7th Cir. 2008).........................................................................16

*Johnson v. Koppers, Inc.*, 726 F.3d 910 (7th Cir. 2013)....................................................................8

*Kidwell v. Eisenhauer,*679 F.3d 957 (7th Cir.2012) .........................................................................14

*King v. Ford Motor Company*, 872 F.3d 833 (7th Cir. 2017)...........................................................15

*Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104 (7th Cir. 2004) .............................................7

*Kubiak v. City of Chicago*, 810 F.3d 476 (7th Cir. 2016) ............................................................11, 12

*McDonald v. Vill. of Winnetka*, 371 F.3d 992 (7th Cir. 2004)...........................................................7

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) .......................................................16

*Mustafa v. Illinois Prop. Tax Appeal Bd.*, 67 F. Supp. 3d 988 (N.D. Ill. 2014) .............................10

*Nagle v. Vill. of Calumet Park*, 554 F.3d 1106 (7th Cir. 2009).........................................................7

*Reed v. The Great Lakes Co.*, 330 F.3d 931 (7th Cir. 2003)...............................................................9

*Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650 (7th Cir. 2012)...............................................17

*Sarullo v. United States Postal Service*, 352 F.3d 789 (3rd Cir. 2003)..............................................9

*Shakman, et al., v. Democratic Organization of Cook County, et al.*, 69-CV-02145(N.D. Ill.) .......................13

*Skiba v. Canadian Nat'l Ry. Co.*, 15 C 5353, 2017 WL 1344525 (N.D. Ill. Apr. 12, 2017).....................9

*Skiba v. Ill. Cent. R.R.*, 884 F.3d 708 (7th Cir. 2018) ...........................................................8, 9, 10

*Sommerfield v. Knasiak*, 967 F.3d 617 (7th Cir. 2020).......................................................................7

*Swetlik v. Crawford*, 738 F.3d 818 (7th Cir. 2013)........................................................................11

*Tate v. Ancell*, 551 Fed. Appx. 877 (7th Cir. 2014)......................................................................11

*Taylor v. Carmouche*, 214 F.3d 788 (7th Cir. 2000)....................................................................14

*Thomas v. Cook CountySheriff's Dep't*, 604 F.3d 293 (7th Cir. 2010)........................................16

*Tyburski v. City of Chicago*, 964 F.3d 590 (7th Cir. 2020) ..........................................................10

*Van Dyke v. Barnes*, No. 13 C 5971, 2017 WL 1105390 (N.D. Ill. Mar. 24, 2017)....................15

*Waddy v. Bd. of Educ. of City of Chicago*, 10 C 6158, 2014 WL 3732573 (N.D. Ill. July 24, 2014)..............7

**Federal Rules & Statutes**

29 U.S.C. § 623(a)(1)..................................................................................................................8