**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RONALD CHRISTOPHER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 20-cv-2716 |
| | ) | |
| v. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ronald Christopher, a former City of Chicago employee who the City fired in 2013, applied for a different position with the City in 2018. The City initially moved forward with his application but then declined to hire him during the final stages of the screening process, ostensibly for reasons relating to his prior termination. The plaintiff, however, attributes the City's decision not to hire him to age discrimination, in violation of the ADEA, and retaliation for engaging in protected First Amendment activity, actionable under 42 U.S.C. Section 1983. The City has moved for summary judgment on both claims, and the plaintiff has moved for partial summary judgment on his retaliation claim. For the reasons that follow, the City's motion for summary judgment is granted in its entirety and, accordingly, the plaintiff's motion for partial summary judgment is denied.

## FACTUAL BACKGROUND[1]

The plaintiff, Ronald Christopher, worked for the City's Department of Fleet and Facility Management (2FM) from 2002 to 2013. DSMF ¶ 1. In November 2018, he applied for the position of Emergency Crew Dispatcher (ECD) with the City's Department of Water Management (DWM).

---

[1] Unless stated otherwise, the following facts are undisputed.

He was 58 years old at the time of his application. DSMF ¶ 2. In July 2019, after participating in the City's pre-employment screening process, Mr. Christopher learned that the City was not hiring him for the ECD position. DSMF ¶¶ 4, 34. He claims that in declining to hire him, the City acted on discriminatory motives with respect to his age and his prior speech criticizing the City's hiring practices when he was employed with the 2FM almost a decade earlier. The City disputes that its decision not to hire Christopher was based on any discriminatory or retaliatory motive. The City contends its decision was based on its discovery during the screening process that the City had previously fired the plaintiff from his 2FM role for disciplinary reasons relating to unprofessional conduct in the workplace.

*Christopher's Prior Employment with the City at 2FM and Termination*

Mr. Christopher's job title at 2FM from February 2002 until October 2013 was Assistant to the Commissioner. PSMF ¶ 6. He believed he outperformed his position, so when the position of Manager of Vehicle Maintenance opened up in 2010, he applied for it, thinking he had a good shot. PSMF ¶ 9. To his disappointment, he was not placed on the referral list of qualified candidates. *Id*. He continued to perform tasks more typically associated with a higher position despite his lower title and pay, and when a job posting for the managerial position opened up again later in 2010, he applied and was again not placed on the referral list of candidates. PSMF ¶ 11. In June 2013, he applied for two other open positions for which he believed he was qualified. Despite his perception that he was entitled to at least interview for those positions, he was again passed over. Mr. Christopher complained internally between 2006 and 2013 to his colleagues and supervisors about being passed over as a result of what he perceived as political hiring practices.[2]

---

[2] There is no evidence in the record of whether he was complaining at that time that the hiring practices were capital-P "Political" in the sense of political parties, lowercase-p "political"

DSMF ¶ 9. He has set forth some evidence that superiors at multiple points indicated that his contributions would eventually be recognized via a promotion or in some other manner. In August 2013, the City audited the plaintiff's position to potentially reclassify him. Although the audit ultimately confirmed that he was outperforming his position (*i.e.*, performing duties of a manager or director), he was not promoted at that time and in fact was given a new title that he considered a demotion.

He proceeded to confront his boss, Walter West, about being continuously passed over for new positions and the results of the audit process. PSMF ¶ 26; DSMF ¶ 17. He entered West's office and closed the door. The confrontation involved the plaintiff raising his voice and using profanity. He admitted in his deposition testimony that he had behaved unprofessionally. DSMF ¶ 16, 50. Another individual overheard the argument and alerted 2FM Commissioner Reynolds. The plaintiff was sent home, and the next day he received a termination letter indicating that he was being terminated as a result of the incident. DSMF ¶ 19-21. He subsequently submitted formal complaints about his treatment and lack of promotions/hiring to the *Shakman* monitor at the City's Office of Inspector General, though those complaints never prompted an investigation. DSMF ¶ 22-23. For clarity, the Court notes that the plaintiff is not presently bringing a claim that his 2FM termination was discriminatory or otherwise violative of his rights. His claim is that these complaints about the City's hiring practices were protected speech for which the City decided not to hire him several years later.

---

in the general sense of relating to the strategic navigation of relationships that bear on the exercise of power, or both.

*The Plaintiff's Application for the ECD Position with DWM*

In November 2018, the City posted two job openings in ECD with the DWM. Mr. Christopher applied about ten days later. DSMF ¶ 25. His application listed "Terminated/Disciplinary" as the reason for leaving his prior position of Assistant to the Commissioner. ECF No. 45-1 at Ex. 26. Martin Wise, a recruiter for the Department of Human Resources, screened applications to ensure they complied with the application directions. Wise determined that twelve applicants, including Mr. Christopher, met the minimum qualifications for the job. DSMF ¶ 27. Four of the twelve, again including Christopher, passed the mandatory aptitude tests, which the City used in lieu of interviews. DSMF ¶ 28. Of those four, two were selected by a random lottery: Mr. Christopher and April Sherman. If either failed a required background check or declined the job offer, the job would go to one of the lottery applicants who was not selected. DSMF ¶ 32. Wise then forwarded the referral list to DWM's personnel department in June 2019 to initiate the background-check and pre-hire paperwork processes.

A few days later, the plaintiff was invited to come in and fill out paperwork, including a criminal background disclosure release form, which asks candidates about their prior employment with the City, among other things such as their date of birth. Included in the form was the question: "Have you ever been discharged or resigned in lieu of discharge from the City of Chicago?" Mr. Christopher checked, "Yes." Under "termination reason/incident," he wrote, "Upon being refused interviews for every position I had applied for, I questioned the Department's hiring practices. I was then released." DSMF ¶ 37. He also entered his date of birth on his release form. PSAMF ¶ 72.

Jacqueline Toledo was the Director of Administration for DWM in July 2019. Her duties in this role included overseeing the ECD hiring process. DSMF ¶ 39. She investigated the

4

circumstances surrounding Mr. Christopher's termination from 2FM and learned that the official reason for his termination was misconduct relating to the argument with his supervisor, West. She accordingly considered Mr. Christopher's response to the termination reason question on the release form to be misleading. DSMF ¶ 42. She spoke with Wise, and Wise obtained documentation related to Mr. Christopher's termination from 2FM (such as his personnel file). Wise spoke with his supervisor, DHR Deputy Commissioner Kathleen Doyle, about Toledo's indication that DWM would prefer not to hire Mr. Christopher because of his past misconduct at 2FM and his misrepresentation on the criminal background form and provided her with the corresponding documentation. DSMF ¶ 44. Deputy Commissioner Doyle emailed Wise back, stating, "DWM has the right to forgo moving forward with the candidate based on the information regarding the circumstances surrounding his prior termination with the City and his misrepresentation on the criminal background form." DSMF ¶ 46. After Toledo learned from Wise that DWM had the discretion to not hire Mr. Christopher, she called Mr. Christopher to inform him that DWM would not be hiring him for the position based on his prior termination and his misrepresentation on the release form. DSMF ¶ 49. Mr. Christopher attempted to explain his side of the story to Toledo on that call. He was not able to successfully plead his case to her. Pltf.'s Resp. to DSMF ¶ 52.

With Mr. Christopher no longer in consideration for the ECD position, Giavonna Cephas, a 42-year-old, was next highest on the referral list. The City used a third-party background check contractor to investigate and confirm Cephas had the requisite experience to meet the ECD

position's minimum qualifications.[3] After she cleared the background check, DWM offered her the position. She accepted.

## ANALYSIS[4]

Summary judgment is appropriate only when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015). If the moving party has demonstrated the absence of a disputed material fact, then the burden shifts to the nonmoving party to "provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012).

---

[3] The parties dispute whether Cephas and Sherman, who are both younger than Mr. Christopher, were actually qualified for the position.

[4] The Court notes that the parties have raised several issues about each other's Local Rule 56 statements of facts, responses to each other's statements of facts, and the admissibility of certain evidence on which the parties have relied in setting forth those statements. For the reasons set forth below, Mr. Christopher's failure to adduce sufficient evidence—whether admissible or not—to survive summary judgment renders these questions moot. This is not to suggest that evidentiary issues and compliance with Local Rule 56.1 are not important. Indeed, they are of extreme importance in many cases where a genuine dispute of material fact may or may not exist based on the existence and admissibility of certain evidence. Here, however, the Court declines to engage these disputes because, even if it ruled in favor of the plaintiff at every turn, there would be no change in the ultimate outcome of this case. As a final note on the matter, the purpose of Local Rule 56.1 is to streamline the resolution of summary judgment motions by consolidating admissible evidence into a roadmap for the Court. Parties should be mindful and judicious when objecting to each other's statements and formulating their own so as not to undermine the Local Rule's underlying purpose.

## I.      Retaliatory Non-Hiring in Contravention of the First Amendment

Mr. Christopher seeks to hold the City directly liable under § 1983 for retaliating against him for exercising his First Amendment rights to free speech and political association when it refused to hire him in 2019. The Seventh Circuit has laid out the legal standard for such claims:

> To prove a First Amendment employment retaliation claim under § 1983, a plaintiff must establish three primary elements. First, the plaintiff must show that his speech was constitutionally protected. Second, the plaintiff must prove that he suffered an adverse employment action as a result of his protected speech that was sufficiently adverse so as to deter the exercise of the free speech. And third, the plaintiff must present evidence to establish that a reasonable jury could find that his speech was a "substantial" or "motivating" factor for his adverse employment action.

*Graber v. Clarke*, 763 F.3d 888 (7th Cir. 2014) (citations omitted).

### A.      *Constitutionally Protected Activity*

Mr. Christopher claims that the City violated his First Amendment right to free speech and political association as a public employee. The political association theory can be dispatched easily; that claim fails because, as the City correctly points out, Christopher has set forth no competent evidence concerning what his political affiliation actually was, that City officials were aware of his political affiliation or made assumptions concerning it, or that the City made its decision not to hire him based on his political affiliation.[5] Accordingly, Mr. Christopher cannot proceed on that basis.

Turning to his other First Amendment theory, Mr. Christopher claims that the City was retaliating against him for previously complaining about the City's hiring practices when it refused

---

[5] The City also argues that the complaint states no claim for retaliation based on political affiliation, arguing that the plaintiff has raised it in this case for the first time on summary judgment. The Court need not address the question because it fails regardless of whether the plaintiff stated it in his complaint.

to hire him for the ECD position in 2019. But to prove a retaliation-against-speech claim, "a public employee first must prove that [his] speech is constitutionally protected." *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016). Without evidence of constitutionally protected speech, there can be no constitutional violation. To prove that his speech was constitutionally protected, the employee must be able to convince a reasonable factfinder that "(1) [he] made the speech as a private citizen, (2) the speech addressed a matter of public concern, and (3) [his] interest in expressing that speech was not outweighed by the state's interests as an employer in promoting effective and efficient public service." *Swetlik v. Crawford*, 738 F.3d 818, 825 (7th Cir. 2013) (internal quotation marks omitted); *see also Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) ("[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."). "Whether a statement is a matter of public concern is a question of law for the court, and we answer this question by examining the content, form, and context of the statement." *Bivens v. Trent*, 591 F.3d 555, 560 (7th Cir. 2010) (internal quotation marks omitted).

Mr. Christopher claims that the City retaliated against him for "speaking out about political discrimination. He was passed over time and again for positions that he was already performing and was qualified for." Pltf.'s Memo (ECF No. 40) at 13. The Seventh Circuit has held that "the motive of the speaker is a relevant, though not dispositive, factor because speech will not be protected if the only point of the speech was 'to further some purely private interest.'" *Trent*, 591 F.3d at 561 (quoting *Kokkinis v. Ivkovich*, 185 F.3d 840, 844 (7th Cir. 1999)). Here, Mr. Christopher's statements of facts contain and cite to no evidence setting forth the actual content of his complaints to coworkers or supervisors, beyond the mere conclusion that those complaints were "about political discrimination." A read of Mr. Christopher's *Shakman* complaint, appended

to the City's memorandum (ECF No. 38-3), reveals that Mr. Christopher's supposedly protected speech was solely about the fact that the City passed Mr. Christopher over for several job openings for which he believed he was qualified, contested his unemployment benefits, and held up his vacation pay because of his conclusory claims about discriminatory hiring practices. The *Shakman* complaint and requested relief are geared entirely toward his own private interest in obtaining the positions for which he applied—containing no indication of any motivation related to furthering the public interest in preventing politically discriminatory or patronage-related hiring practices by the City. The evidence points only toward that conclusion. That the public "may have been interested" in Mr. Christopher's complaints about supposedly political hiring practices "does not raise the speech here to the level of public concern." *Id*. at 562. As a result, even assuming that the City was at least partly motivated not to hire him because of his prior complaints about the City's hiring practices, Mr. Christopher cannot survive summary judgment on his First Amendment claim.

### B. *Municipal Liability*

Even if Mr. Christopher could establish that he suffered a constitutional injury, he cannot show that the injury is attributable to the City. The individual government employees who refused to hire him, *i.e.*, those who executed the purported adverse employment action, are not defendants in this case. The Supreme Court has held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). To hold the City liable under § 1983, then, Mr. Christopher must establish that his injury is attributable to the City by means other than the doctrine of *respondeat superior*. His injury must stem from an unconstitutional "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id*. The Seventh Circuit has interpreted this to mean that a plaintiff can

prevail under *Monell* by demonstrating the existence of one of the following: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021), *cert. denied sub nom. First Midwest Bank v. City of Chicago*, 142 S. Ct. 389 (2021) (quoting *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019)). Further, the "plaintiff must also prove that the policy or custom demonstrates municipal fault," by either showing that the municipal action, policy, or custom is facially violative of a federal right or showing that, even though "the municipality has not directly violated" the plaintiff's rights, it nevertheless "caused an employee to do so" with deliberate indifference to those rights. *Id*. at 986-87.

Mr. Christopher's constitutional claim against the City must fail because he has not met his burden of showing that the evidence can support any viable theory of municipal liability. He argues that the City violated his rights through its custom or practice of "seeking approval or permission for not hiring someone." Pltf.'s Resp. (ECF No. 47) at 12. Mr. Christopher claims that Martin Wise's request of Kathleen Doyle, Deputy Commissioner of the City's Human Resources Department, for permission not to hire Mr. Christopher for the ECD position in July 2019, led to his constitutional injury. *Id*. He purports to use this example as evidence of a custom or practice; however, one isolated incident is not enough to show it was a custom or practice within the City's hiring processes, let alone one that can give rise to municipal fault (*e.g.*, through deliberate indifference). *See Daniel v. Cook Cnty.*, 833 F.3d 728, 734 (7th Cir. 2016) ("We have said in general terms that an inmate can meet this burden by offering competent evidence tending to show

a general pattern of repeated behavior (*i.e.*, something greater than a mere isolated event)." (internal quotation marks omitted)).

Mr. Christopher has not asserted any other viable theories of municipal liability under *Monell* or its progeny.[6] Therefore, the City is entitled to summary judgment with regard to the political retaliation claim.

## II.  Age Discrimination

The City has also moved for summary judgment on Mr. Christopher's age discrimination claim under the ADEA, 29 U.S.C. § 623(a), and 42 U.S.C. § 1983. Mr. Christopher has responded to assert the viability of his age discrimination claim only under his ADEA theory. He was 58 years old at the time of his application and therefore falls within the ADEA's protected class of those who are 40 years or older at the time of refusal to hire. *See* 29 U.S.C.A. § 631(a). The City does not dispute that he met the minimum qualifications for the position, or that the City ultimately refused to hire him. Therefore, he must be able to show the establish the remaining aspect of his claim: that the City's refusal to hire Mr. Christopher was because of his age. *See* 29 U.S.C. § 623(a)(1). "[I]n the ADEA context, it's not enough to show that age was *a* motivating factor. Mr. Christopher must prove that, but for his age, the adverse action would not have occurred," *Martino v. MCI Commc'ns Serv., Inc.*, 574 F.3d 447, 455 (7th Cir. 2009), *i.e.*, the City would have hired him if he were young enough. He can accomplish this in two ways: He "may proceed by

---

[6] The plaintiff's memorandum in support of its motion for partial summary judgment identifies a City Diversity and Equal Employment Opportunity Policy regarding retaliation that he alleges the City employees violated in refusing to hire him. Pltf.'s Memo. (ECF No. 40) at 14. The plaintiff did not continue to pursue this argument after the City disputed it in its response memorandum, presumably because it is premised on an incorrect interpretation of *Monell*. The policy or custom must itself be constitutionally violative (or some violation must stem directly from it) to support municipal liability; a municipal employee's violation of a governmental policy or departure from custom does not in itself support a *Monell* claim.

introducing direct or circumstantial evidence that" the City refused to hire him because of his age, *Carson v. Lake County, Indiana*, 865 F.3d 526 (7th Cir. 2017), or he may proceed under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework, which involves showing that similarly situated (but younger) applicants were treated more favorably and then submitting evidence that the City's proffered and nondiscriminatory reason for that differential treatment was pretextual.[7] *See Simpson v. Franciscan Alliance, Inc.*, 827 F.3d 656, 661 (7th Cir. 2016). "However the plaintiff chooses to proceed, at the summary judgment stage the court must consider all admissible evidence to decide whether a reasonable jury could find that the plaintiff suffered an adverse action because of her age." *Carson*, 865 F.3d at 533.

Mr. Christopher cannot survive summary judgment on his age discrimination claim. He has offered no evidence to show that the City's stated reason for not hiring him—that he was terminated for yelling and using profanity toward his supervisor at 2FM and then not disclosing the incident on his background check form when asked to list the reason for his termination—was pretextual. Without being able to show any evidence that this legitimate, nondiscriminatory reason was pretextual, Mr. Christopher cannot proceed under either standard. (Recall that mixed-motivation theories do not suffice under the ADEA, which is "narrower than Title VII of the Civil Rights Act of 1964" in this respect. *Carson*, 865 F.3d at 532.) Christopher concedes that there is no evidence suggesting that City officials involved in the hiring process made any comments about

---

[7] The City does not dispute that the plaintiff has met his burden on the first three elements of the *McDonnell-Douglas* burden-shifting framework. The City does, however, dispute that the plaintiff is able to use Cephas and Sherman, who are both younger than the plaintiff, as similarly situated comparators, primarily because they differ from the plaintiff in that they were never fired from the City, much less fired for a disciplinary reason. While this argument is well taken, it is unnecessary for the Court to delve too deeply since the plaintiff's claim cannot proceed regardless of whether he proceeds under the more rigid burden-shifting framework of *McDonnell-Douglas* or through the more holistic review elucidated in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016).

Mr. Christopher's age. His only argument that age may have been a factor is that the City's hiring officials were aware of the candidates' dates of birth, were just looking for an excuse not to hire him (and to hire someone younger), and found that excuse in his prior termination. That is simply not enough. "An employer's knowledge that the plaintiff is a member of a protected class is obviously not enough to cast doubt on that employer's proffered reason for rejecting a candidate." *Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir. 1996) (holding so in the Title VII context, though the same principle applies here). Mr. Christopher also tries to argue that profanity was commonplace at 2FM, so not hiring him for using profanity toward West at his old job was unreasonable (a "lame" excuse, according to him). But elsewhere Mr. Christopher argues that Wise did not contact any of the individuals involved in Mr. Christopher's termination to verify what transpired in 2013. Therefore, if anything, the fact that profanity was commonplace at 2FM would go toward whether Mr. Christopher's use of profanity was a pretextual reason for firing him in 2013, not whether the non-hiring for that reason (and that his disclosure regarding the termination on his background-check form was interpreted as misleading) in 2019 was pretextual. In sum, Mr. Christopher has not succeeded in adducing sufficient evidence to survive summary judgment on his age discrimination claim. As a result, his age discrimination claim also fails.

*    *    *

For the foregoing reasons, the defendant City of Chicago's motion for summary judgment is granted, and the plaintiff Ronald Christopher's is denied. Judgment will be entered in favor of the defendant City of Chicago on both counts.

Dated: December 15, 2022

John J. Tharp, Jr.
United States District Judge